1    Rory Brian Riley (ASB 032933)
     Morgan and Morgan Arizona PLLC
2    2355 E. Camelback Road Suite 335
3    Phoenix, AZ 85016
     Phone: 602-735-0250
4    Email: briley@forthepeople.com

5
     William B. Federman*
6    wbf@federmanlaw.com
     FEDERMAN & SHERWOOD
7    10205 N. Pennsylvania Ave.
8    Oklahoma City, OK 73120
     Telephone: (405) 235-1560
9    Fax: (405) 239-2112

10
     *Pro Hac Vice application to be submitted
11
     Counsel for Plaintiff and the Proposed Class
12

13              UNITED STATES DISTRICT COURT
                    DISTRICT OF ARIZONA
14

15   CHRIS BAGLEY, individually and on        Case No.:
     behalf of all others similarly situated,
16                                             CLASS ACTION COMPLAINT
                          Plaintiff,
17                                             JURY TRIAL DEMANDED
     v.
18
     U-HAUL INTERNATIONAL, INC.,
19
                          Defendant.
20

21

22

23

24

25

26

27

28

1    Plaintiff Chris Bagley ("Plaintiff"), individually and on behalf of all others
2    similarly situated, and on behalf of the general public, brings this Class Action
3    Complaint, against defendant U-Haul International, Inc. (referred to herein as "U-Haul,"
4    "Defendant," or the "Company") based on personal knowledge and the investigation of
5    counsel, and alleges as follows:

6    **I.    INTRODUCTION**

7        1.      With this action, Plaintiff seeks to hold Defendant responsible for the
8    harms it caused Plaintiff and similarly situated persons in the preventable data breach of
9    Defendant's inadequately protected computer network.

10       2.      On August 1, 2022, U-Haul determined that cybercriminals obtained two
11   unique passwords for accessing Defendant's contract search tool and accessed the
12   contracts of Defendant's past and current customers, including Plaintiff and Class
13   Members, between November 5, 2021, and April 5, 2022 ("Data Breach" or "Breach").

14       3.      According to U-Haul, the personal information accessed by cybercriminals
15   includes names, dates of birth, and driver's license numbers. ("PII" or "Personal
16   Information").[1]

17       4.      U-Haul is a moving truck, trailer, and self-storage rental company.

18       5.      In order to receive these services, Plaintiff and Class members were
19   required to provide Defendant with their Personal Information and did so with the
20   understanding that such information would be kept safe from unauthorized access.

21       6.      By taking possession and control of Plaintiff's and Class members'
22   Personal Information, Defendant assumed a duty to securely store and protect the
23   Personal Information of Plaintiff and the Class.

24       7.      Defendant breached this duty and betrayed the trust of Plaintiff and Class
25   members by failing to properly safeguard and protect their Personal Information, thus
26   enabling cyber criminals to access, acquire, appropriate, compromise, disclose,
27   encumber, exfiltrate, release, steal, misuse, and/or view it.

28   _____
     [1] https://www.uhaul.com/Update/.

1    8.    Defendant's misconduct – failing to implement adequate and reasonable

2    measures to protect Plaintiff's and Class members' Personal Information, failing to

3    timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data

4    Breach, failing to disclose the material facts that it did not have adequate security

5    practices in place to safeguard the Personal Information, and failing to provide timely

6    and adequate notice of the Data Breach – caused substantial harm and injuries to

7    Plaintiff and Class members across the United States.

8    9.    Due to Defendant's negligence and failures, cyber criminals obtained and

9    now possess everything they need to commit personal identity theft and wreak havoc on

10   the financial and personal lives of countless individuals, for decades to come.[2]

11   10.   Plaintiff brings this class action lawsuit to hold Defendant responsible for

12   its grossly negligent—indeed, reckless—failure to use statutorily required or reasonable

13   industry cybersecurity measures to protect Class members' Personal Information.

14   11.   As a result of the Data Breach, Plaintiff and Class members have already

15   suffered damages. For example, now that their Personal Information has been released

16   into the criminal cyber domains, Plaintiff and Class members are at imminent and

17   impending risk of identity theft. This risk will continue for the rest of their lives, as

18   Plaintiff and Class members are now forced to deal with the danger of identity thieves

19   possessing and using their Personal Information.

20   12.   Additionally, Plaintiff and Class members have already lost time and

21   money responding to and mitigating the impact of the Data Breach, which efforts are

22   continuous and ongoing.

23   13.   Plaintiff brings this action individually and on behalf of the Class and

24   seeks actual damages and restitution.  Plaintiff also seeks declaratory and injunctive

25   relief, including significant improvements to Defendant's data security systems and

26

27

28   [2] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/f3f3fcf1-7bee-45cc-a959-5fb886bf6ee1.shtml.

CLASS ACTION COMPLAINT

1    protocols, future annual audits, Defendant-funded long-term credit monitoring services,

2    and other remedies as the Court sees necessary and proper.

3    **II.**     **THE PARTIES**

4        14.     Plaintiff Chris Bagley is a citizen and resident of Oklahoma.

5        15.     Defendant is a Nevada corporation with its principal place of business in

6    Phoenix, Arizona.

7    **III.**    **JURISDICTION AND VENUE**

8        16.     Plaintiff incorporates by reference all allegations of the preceding

9    paragraphs as though fully set forth herein.

10       17.     This Court has diversity jurisdiction over this action under the Class

11    Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action

12    involving more than 100 class members, the amount in controversy exceeds $5,000,000,

13    exclusive of interest and costs, and Plaintiff and members of the Class are citizens of

14    states that differ from Defendant.

15       18.     This Court has personal jurisdiction over Defendant because Defendant

16    conducts business in and have sufficient minimum contacts with Arizona.

17       19.     Venue is likewise proper as to Defendant in this District under 28 U.S.C.

18    § 1391(a)(1) because Defendant's principal place of business is in this District and many

19    of Defendant's acts complained of herein occurred within this District.

20    **IV.**    **FACTUAL ALLEGATIONS**

21       **A.**     **The Data Breach and Defendant's Belated Notice**

22       20.     Between at least November 5, 2021, and April 5, 2022, third-party cyber

23    criminals conducted a successful cybersecurity attack whereby they infiltrated

24    Defendant's systems and gained unauthorized access to Personal Information of likely

25    thousands of individuals whose data was stored within Defendant's system.

26

27

28

1    21.    The Breach was not detected until July 12, 2021.[3]  Prior to that time,

2   cybercriminals were able to roam Defendant's systems for months without detection or

3   interference.

4    22.    Following a forensic investigation, it was determined that the

5   cybercriminals accessed certain customer contracts containing Personal Information.[4]

6    23.    The type of Personal Information accessed by the unauthorized actors

7   included includes names, dates of birth, and driver's license numbers.[5]

8    24.    Based on the Notice received by Plaintiff, the type of cyberattack involved,

9   and public news reports, it is plausible and likely that Plaintiff's Personal Information

10   was stolen in the Data Breach.

11    25.    Upon information and belief, the unauthorized third-party cyber criminal

12   gained access to the Personal Information and has engaged in (and will continue to

13   engage in) misuse of the Personal Information, including marketing and selling

14   Plaintiff's and Class members' Personal Information on the dark web.

15    26.    Plaintiff and Class members were required to provide their Personal

16   Information to Defendant with the reasonable expectation and mutual understanding that

17   U-Haul would comply with its obligations to keep such information confidential and

18   secure from unauthorized access.

19    27.    Accordingly, Defendant had obligations created by industry standards,

20   common law, statutory law, and its own assurances and representations to keep Plaintiff

21   and Class members' Personal Information confidential and to protect such Personal

22   Information from unauthorized access.

23    28.    Nevertheless, Defendant failed to spend sufficient resources on preventing

24   external access, detecting outside infiltration, and training its employees to identify

25   email-borne threats and defend against them.

26

27   _____

28   [3] https://www.uhaul.com/Update/.
     [4] *Id.*
     [5] *Id.*

29.     The stolen Personal Information at issue has great value to the hackers, due to the large number of individuals affected and the fact the sensitive information that was part of the data that was compromised.

**B.     Plaintiff's Experience**

30.     Plaintiff Bagley entrusted his Private Information to one of the entities that contracts services from U-Haul. Upon information and belief, U-Haul's agreements with those entities require it to protect and maintain the confidentiality of Private Information entrusted to it.

31.     Plaintiff received an email from Defendant dated September 9, 2022, informing him that his Personal Information was specifically identified as having been compromised in the Data Breach.  The email also indicated that other information on Defendant's systems at the time of the Breach that could have been exposed to cybercriminals.  Thus, according to the email, other information of Plaintiff may have been accessed or stolen.

32.     To the best of his knowledge, Plaintiff has never before been a victim of a data breach.

33.     Plaintiff and Class members were required to provide his Personal Information to U-Haul in order to receive vehicle or storage rental services.

34.     Plaintiff and Class members entrusted their Personal Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

35.     Because of the Data Breach, Plaintiff's Personal Information is now in the hands of cyber criminals. Plaintiff and all Class members are now imminently at risk of crippling future identity theft and fraud.

36.     As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including

1   investigating the Data Breach, researching how best to ensure that he is protected from

2   identity theft, and reviewing account statements and other information.

3        37.    Plaintiff has also suffered injury directly and proximately caused by the

4   Data Breach, including: (a) theft of Plaintiff's valuable Personal Information; (b) the

5   imminent and certain impending injury flowing from fraud and identity theft posed by

6   Plaintiff's Personal Information being placed in the hands of cyber criminals; (c)

7   damages to and diminution in value of Plaintiff's Personal Information that was

8   entrusted to Defendant for the sole purpose of obtaining rental or storage services with

9   the understanding that Defendant would safeguard this information against disclosure;

10  (d) loss of the benefit of the bargain with Defendant to provide adequate and reasonable

11  data security—*i.e.*, the difference in value between what Plaintiff should have received

12  from Defendant and Defendant's defective and deficient performance of that obligation

13  by failing to provide reasonable and adequate data security and failing to protect

14  Plaintiff's Personal Information; and (e) continued risk to Plaintiff's Personal

15  Information, which remains in the possession of Defendant and which is subject to

16  further breaches so long as Defendant fails to undertake appropriate and adequate

17  measures to protect the Personal Information that was entrusted to Defendant.

18      **C.**    **Defendant had an Obligation to Protect Personal Information under**

19            **the Law and the Applicable Standard of Care**

20       38.    Defendant also prohibited by the Federal Trade Commission Act (the

21  "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in

22  or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that

23  a company's failure to maintain reasonable and appropriate data security for consumers'

24  sensitive personal information is an "unfair practice" in violation of the FTC Act. *See,*

25  *e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

26       39.    Defendant is further required by various states' laws and regulations to

27  protect Plaintiff's and Class members' Personal Information.

28

1    40.    Defendant owed a duty to Plaintiff and the Class to design, maintain, and

2   test its computer and application systems to ensure that the Personal Information in its

3   possession was adequately secured and protected.

4    41.    Defendant owed a duty to Plaintiff and the Class to create and implement

5   reasonable data security practices and procedures to protect the Personal Information in

6   its possession, including adequately training its employees (and others who accessed

7   Personal Information within its computer systems) on how to adequately protect

8   Personal Information.

9    42.    Defendant owed a duty to Plaintiff and the Class to implement processes

10   that would detect a breach on its systems in a timely manner.

11    43.    Defendant owed a duty to Plaintiff and the Class to act upon data security

12   warnings and alerts in a timely fashion.

13    44.    Defendant owed a duty to Plaintiff and the Class to disclose if its computer

14   systems and data security practices were inadequate to safeguard individuals' Personal

15   Information from theft because such an inadequacy would be a material fact in the

16   decision to entrust Personal Information with Defendant.

17    45.    Defendant owed a duty to Plaintiff and the Class to disclose in a timely and

18   accurate manner when data breaches occurred.

19    46.    Defendant owed a duty of care to Plaintiff and the Class because it was a

20   foreseeable victim of a data breach.

21    **D.    Defendant was on Notice of Cyber Attack Threats and of the
         Inadequacy of their Data Security**

22

23    47.    Data security breaches have dominated the headlines for the last two

24   decades. And it doesn't take an IT industry expert to know it. The general public can tell

25

26

27

28

CLASS ACTION COMPLAINT

1   you the names of some of the biggest cybersecurity breaches: Target,[6] Yahoo,[7] Marriott

2   International,[8] Chipotle, Chili's, Arby's,[9] and others.[10]

3       48.     Defendant should certainly have been aware, and indeed was aware, that it

4   was at risk for a data breach that could expose the PII that it collected and maintained.

5       49.     Defendant was also on notice of the importance of data encryption of

6   Personal Information. Defendant knew it kept Personal Information in its systems and

7   yet it appears Defendant did not encrypt these systems or the information contented

8   within them.

9       **E.     Cyber Criminals Will Use Plaintiff's and Class Members' Personal
10               Information to Defraud Them**

11      50.     Plaintiff and Class members' Personal Information is of great value to

12  hackers and cyber criminals, and the data stolen in the Data Breach has been used and

13  will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and

14  the Class members and to profit off their misfortune.

15      51.     Each year, identity theft causes tens of billions of dollars of losses to

16  victims in the United States.[11] For example, with the Personal Information stolen in the

17

18  [6] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons
19  Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

20  [7] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct.
21  4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

22  [8] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22,
23  2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.

24  [9] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*,
25  CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

26  [10] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE
27  (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

28  [11]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst.,
    https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing

1   Data Breach, identity thieves can open financial accounts, apply for credit, collect

2   government benefits, commit crimes, create false driver's licenses and other forms of

3   identification and sell them to other criminals or undocumented immigrants, steal

4   benefits, give breach victims' names to police during arrests, and many other harmful

5   forms of identity theft.[12] These criminal activities have and will result in devastating

6   financial and personal losses to Plaintiff and Class members.

7       52.     Personal Information is such a valuable commodity to identity thieves that

8   once it has been compromised, criminals will use it and trade the information on the

9   cyber black-market for years.[13]

10      53.     This was a financially motivated Data Breach, as apparent from the

11  discovery of the cyber criminals seeking to profit off the sale of Plaintiff's and the Class

12  members' Personal Information on the dark web. The Personal Information exposed in

13  this Data Breach are valuable to identity thieves for use in the kinds of criminal activity

14  described herein.

15      54.     These risks are both certainly impending and substantial. As the FTC has

16  reported, if hackers get access to personally identifiable information, they will use it.[14]

17      55.     Hackers may not use the accessed information right away. According to

18  the U.S. Government Accountability Office, which conducted a study regarding data

19  breaches:

20          [I]n some cases, stolen data may be held for up to a year or more
            before being used to commit identity theft. Further, once stolen data
21          have been sold or posted on the Web, fraudulent use of that
            information may continue for years. As a result, studies that attempt
22

23  _____

24  Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of
    Complexity").

25  [12] https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-
    number-is-stolen/.
26

27  [13] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However,
    the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu
    [14]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24,
28  2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-
    info.

1  to measure the harm resulting from data breaches cannot necessarily
2  rule out all future harm.[15]

3  56.  As described above, identity theft victims must spend countless hours and
4  large amounts of money repairing the impact to their credit.[16]

5  57.  With this Data Breach, identity thieves have already started to prey on the
6  victims, and one can reasonably anticipate this will continue.

7  58.  Victims of the Data Breach, like Plaintiff and other Class members, must
8  spend many hours and large amounts of money protecting themselves from the current
9  and future negative impacts to their credit because of the Data Breach.[17]

10  59.  In fact, as a direct and proximate result of the Data Breach, Plaintiff and
11  the Class have suffered, and have been placed at an imminent, immediate, and
12  continuing increased risk of suffering, harm from fraud and identity theft.  Plaintiff and
13  the Class must now take the time and effort and spend the money to mitigate the actual
14  and potential impact of the Data Breach on their everyday lives, including purchasing
15  identity theft and credit monitoring services, placing "freezes" and "alerts" with credit
16  reporting agencies, contacting their financial institutions, healthcare providers, closing or
17  modifying financial accounts, and closely reviewing and monitoring bank accounts,
18  credit reports, and health insurance account information for unauthorized activity for
19  years to come.

20  60.  Plaintiff and the Class have suffered, and continue to suffer, actual harms
21  for which they are entitled to compensation, including:

22       a.  Trespass, damage to, and theft of their personal property including
23           Personal Information;

24       b.  Improper disclosure of their Personal Information;

25

26  _____

27  [15] *Data Breaches Are Frequent*, *supra* note 11.
    [16] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013),
    http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.
28  [17] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013),
    http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

1      c.    The imminent and certainly impending injury flowing from
2      potential fraud and identity theft posed by their Personal
3      Information being placed in the hands of criminals and having been
4      already misused;

5      d.    The imminent and certainly impending risk of having their Personal
6      Information used against them by spam callers to defraud them;

7      e.    Damages flowing from Defendant's untimely and inadequate
8      notification of the data breach;

9      f.    Loss of privacy suffered as a result of the Data Breach;

10      g.    Ascertainable losses in the form of out-of-pocket expenses and the
11      value of their time reasonably expended to remedy or mitigate the
12      effects of the data breach;

13      h.    Ascertainable losses in the form of deprivation of the value of
14      patients' personal information for which there is a well-established
15      and quantifiable national and international market;

16      i.    The loss of use of and access to their credit, accounts, and/or funds;

17      j.    Damage to their credit due to fraudulent use of their Personal
18      Information; and

19      k.    Increased cost of borrowing, insurance, deposits and other items
20      which are adversely affected by a reduced credit score.

21      61.    Moreover, Plaintiff and Class members have an interest in ensuring that
22 their information, which remains in the possession of Defendant, is protected from
23 further breaches by the implementation of industry standard and statutorily compliant
24 security measures and safeguards. Defendant has shown itself to be incapable of
25 protecting Plaintiff's and Class members' Personal Information.

26      62.    Plaintiff and Class members are desperately trying to mitigate the damage
27 that Defendant has caused them but, given the Personal Information Defendant made
28 accessible to hackers, they are certain to incur additional damages. Because identity

1    thieves have their Personal Information, Plaintiff and all Class members will need to

2    have identity theft monitoring protection for the rest of their lives.

3        63.    None of this should have happened. The Data Breach was preventable.

4    **F.    Defendant Could Have Prevented the Data Breach but Failed to
        Adequately Protect Plaintiff's and Class Members' Personal
5        Information**

6        64.    Data breaches are preventable.[18] As Lucy Thompson wrote in the DATA

7    BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that

8    occurred could have been prevented by proper planning and the correct design and

9    implementation of appropriate security solutions."[19] he added that "[o]rganizations that

10   collect, use, store, and share sensitive personal data must accept responsibility for

11   protecting the information and ensuring that it is not compromised . . . ."[20]

12       65.    "Most of the reported data breaches are a result of lax security and the

13   failure to create or enforce appropriate security policies, rules, and procedures …

14   Appropriate information security controls, including encryption, must be implemented

15   and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[21]

16       66.    The FTC has promulgated numerous guides for businesses which highlight

17   the importance of implementing reasonable data security practices. According to the

18   FTC, the need for data security should be factored into all business decision-making.

19       67.    In 2016, the FTC updated its publication, *Protecting Personal*

20   *Information: A Guide for Business*, which established cyber-security guidelines for

21   businesses. The guidelines note that businesses should protect the personal customer

22   information that they keep; properly dispose of personal information that is no longer

23   needed; encrypt information stored on computer networks; understand their network's

24

---

25   [18]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA
26   BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

27   [19]*Id.* at 17.

28   [20]*Id.* at 28.

[21]*Id.*

1   vulnerabilities; and implement policies to correct any security problems.[7] The guidelines

2   also recommend that businesses use an intrusion detection system to expose a breach as

3   soon as it occurs; monitor all incoming traffic for activity indicating someone is

4   attempting to hack the system; watch for large amounts of data being transmitted from

5   the system; and have a response plan ready in the event of a breach.[22]

6       68.   The FTC further recommends that companies not maintain PII longer than

7   is needed for authorization of a transaction; limit access to sensitive data; require

8   complex passwords to be used on networks; use industry-tested methods for security;

9   monitor for suspicious activity on the network; and verify that third-party service

10   providers have implemented reasonable security measures.

11       69.   The FTC has brought enforcement actions against businesses for failing to

12   adequately and reasonably protect customer data, treating the failure to employ

13   reasonable and appropriate measures to protect against unauthorized access to

14   confidential consumer data as an unfair act or practice prohibited by Section 5 of the

15   Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these

16   actions further clarify the measures businesses must take to meet their data security

17   obligations.

18       70.   These FTC enforcement actions include actions against healthcare

19   providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*,

20   2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016)

21   ("[T]he Commission concludes that LabMD's data security practices were unreasonable

22   and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

23       71.   Defendant failed to properly implement basic data security practices,

24   including those set forth by the FTC.

25

26

27
_____

28   [22] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016).
Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Jan. 19, 2022).

72.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73.     Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74.     Defendant required Plaintiff and Class members to surrender their Personal Information and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal Information.

75.     Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal Information.

76.     Defendant was at all times fully aware of its obligation to protect the Personal Information of Plaintiff and Class members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

77.     Defendant maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained and/or exchanged, unencrypted, in Defendant's systems and were maintained in a condition vulnerable to cyberattacks.

78.     Defendant knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

79.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal Information from those risks left that information in a dangerous condition.

80.     Defendant disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.     CLASS ACTION ALLEGATIONS

81.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

82.     Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23.  Plaintiff asserts all claims on behalf of the Class, defined as follows:

> All persons residing in the United States whose personal information was compromised as a result of the U-Haul Data Breach that occurred between November 5, 2021 and April 5, 2022.

83.     Plaintiff reserves the right to amend the above definitions or to propose alternative or add subclasses in subsequent pleadings and motions for class certification.

84.     The proposed Nationwide Class and Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

1    85.    **Numerosity:** The proposed Class is believed to be so numerous that

2    joinder of all members is impracticable. The proposed Subclass is also believed to be so

3    numerous that joinder of all members would be impractical.

4    86.    **Typicality:** Plaintiff's claims are typical of the claims of the Class.

5    Plaintiff and all members of the Class were injured through Defendant's uniform

6    misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical

7    to those that give rise to the claims of every other Class member because Plaintiff and

8    each member of the Class had their sensitive Personal Information compromised in the

9    same way by the same conduct of Defendant.

10   87.    **Adequacy:** Plaintiff is an adequate representative of the Class because his

11   interests do not conflict with the interests of the Class and proposed Subclass that he

12   seeks to represent; Plaintiff has retained counsel competent and highly experienced in

13   data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to

14   prosecute this action vigorously. The interests of the Class will be fairly and adequately

15   protected by Plaintiff and his counsel.

16   88.    **Superiority:** A class action is superior to other available means of fair and

17   efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each

18   individual Class member is relatively small in comparison to the burden and expense of

19   individual prosecution of complex and expensive litigation. It would be very difficult, if

20   not impossible, for members of the Class individually to effectively redress Defendant's

21   wrongdoing. Even if Class members could afford such individual litigation, the court

22   system could not. Individualized litigation presents a potential for inconsistent or

23   contradictory judgments. Individualized litigation increases the delay and expense to all

24   parties, and to the court system, presented by the complex legal and factual issues of the

25   case. By contrast, the class action device presents far fewer management difficulties and

26   provides benefits of single adjudication, economy of scale, and comprehensive

27   supervision by a single court.

28

89.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.      Whether Defendant engaged in the wrongful conduct alleged herein;

b.      Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Personal Information;

c.      Whether Defendant's email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal Information violated the FTC Act, and/or state laws and/or Defendant's other duties discussed herein;

d.      Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Personal Information, and whether it breached this duty;

e.      Whether Defendant knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach;

f.      Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g.      Whether Defendant breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Personal Information;

h.      Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

1     i.  Whether Defendant continues to breach duties to Plaintiff and the

2        Class;

3     j.  Whether Plaintiff and the Class suffered injury as a proximate result

4        of Defendant's negligent actions or failures to act;

5     k.  Whether Plaintiff and the Class are entitled to recover damages,

6        equitable relief, and other relief;

7     l.  Whether injunctive relief is appropriate and, if so, what injunctive

8        relief is necessary to redress the imminent and currently ongoing

9        harm faced by Plaintiff and members of the Class and the general

10       public;

11     m.  Whether Defendant's actions alleged herein constitute gross

12       negligence; and

13     n.  Whether Plaintiff and Class members are entitled to punitive

14       damages.

## VI. CAUSES OF ACTION

### COUNT ONE – NEGLIGENCE

90. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

91. Defendant solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of its business.

92. Upon accepting and storing the Personal Information of Plaintiff and Class members, Defendant undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

93. Defendant had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

94.     Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and the Class members had no ability to protect their Personal Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

95.     Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal information.

96.     Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

97.     Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

98.     Defendant had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendant owed Plaintiff and the Class include:

    a.     To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, email accounts, protocols, policies, procedures and

1          practices to ensure that Plaintiff's and Class members' Personal

2          Information was adequately secured from impermissible release,

3          disclosure, and publication;

4      b.    To protect Plaintiff's and Class members' Personal Information in

5          its possession by using reasonable and adequate security procedures

6          and systems;

7      c.    To implement processes to quickly detect a data breach, security

8          incident, or intrusion involving its business email system, networks

9          and servers; and

10     d.    To promptly notify Plaintiff and Class members of any data breach,

11         security incident, or intrusion that affected or may have affected

12         their Personal Information.

13    99.    Only Defendant was in a position to ensure that its systems and protocols

14 were sufficient to protect the Personal Information that Plaintiff and the Class had

15 entrusted to it.

16    100.   Defendant breached its duty of care by failing to adequately protect

17 Plaintiff's and Class members' Personal Information. Defendant breached its duties by,

18 among other things:

19      a.    Failing to exercise reasonable care in obtaining, retaining securing,

20         safeguarding, deleting, and protecting the Personal Information in

21         its possession;

22      b.    Failing to protect the Personal Information in its possession by

23         using reasonable and adequate security procedures and systems;

24      c.    Failing to adequately and properly audit, test, and train its

25         employees to avoid phishing emails;

26      d.    Failing to use adequate email security systems, including healthcare

27         industry standard SPAM filters, DMARC enforcement, and/or

28

CLASS ACTION COMPLAINT

1                                     Sender Policy Framework enforcement to protect against phishing

2                                     emails;

3         e.      Failing to adequately and properly audit, test, and train its

4                     employees regarding how to properly and securely transmit and

5                     store Personal Information;

6         f.       Failing to adequately train its employees to not store Personal

7                     Information in their email inboxes longer than absolutely necessary

8                     for the specific purpose that it was sent or received;

9         g.     Failing to consistently enforce security policies aimed at protecting

10                    Plaintiff's and the Class's Personal Information;

11         h.     Failing to implement processes to quickly detect data breaches,

12                    security incidents, or intrusions;

13         i.      Failing to promptly notify Plaintiff and Class members of the Data

14                    Breach that affected their Personal Information.

15      101.   Defendant's willful failure to abide by these duties was wrongful, reckless,

16  and grossly negligent in light of the foreseeable risks and known threats.

17      102.   As a proximate and foreseeable result of Defendant's grossly negligent

18  conduct, Plaintiff and the Class have suffered damages and are at imminent risk of

19  additional harms and damages (as alleged above).

20      103.   Through Defendant's acts and omissions described herein, including but

21  not limited to Defendant's failure to protect the Personal Information of Plaintiff and

22  Class members from being stolen and misused, Defendant unlawfully breached its duty

23  to use reasonable care to adequately protect and secure the Personal Information of

24  Plaintiff and Class members while it was within Defendant's possession and control.

25      104.   Further, through its failure to provide timely and clear notification of the

26  Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class

27  members from taking meaningful, proactive steps toward securing their Personal

28  Information and mitigating damages.

105.    As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies.

106.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

107.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

108.    In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

109.    Defendant violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiff's and Class members' injuries were a direct and proximate result of Defendant's violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

110.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and the Class.

111.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

112.    Defendant gathered and stored the Personal Information of Plaintiff and the Class as part of its business of soliciting and facilitating its services to its patients, which affect commerce.

113.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Personal Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

114.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal Information, and by failing to provide prompt and specific notice without reasonable delay.

115.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

116.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

117.    Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal Information.

118.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

119.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

120.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence.

121.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

1             **COUNT TWO – UNJUST ENRICHMENT**

2        122.    Plaintiff incorporates by reference all allegations of the preceding

3 paragraphs as though fully set forth herein.

4        123.    Plaintiff and the Class bring this claim in the alternative to all other claims

5 and remedies at law.

6        124.    Through and as a result of Plaintiff and Class members' use of Defendant's

7 rental services, Defendant received monetary benefits.

8        125.    Defendant collected, maintained, and stored the Personal Information of

9 Plaintiff and Class members and, as such, Defendant had direct knowledge of the

10 monetary benefits conferred upon it by Plaintiff's and Class members' use of

11 Defendant's services.

12        126.    Defendant, by way of its affirmative actions and omissions, including its

13 knowing violations of its express or implied contracts with Plaintiff and the Class

14 members, knowingly and deliberately enriched itself by saving the costs it reasonably

15 and contractually should have expended on reasonable data privacy and security

16 measures to secure Plaintiff's and Class members' Personal Information.

17        127.    Instead of providing a reasonable level of security, training, and protocols

18 that would have prevented the Data Breach, as described above and as is common

19 industry practice among companies entrusted with similar Personal Information,

20 Defendant, upon information and belief, instead consciously and opportunistically

21 calculated to increase its own profits at the expense of Plaintiff and Class members.

22        128.    As a direct and proximate result of Defendant's decision to profit rather

23 than provide adequate data security, Plaintiff and Class members suffered and continue

24 to suffer actual damages, including (i) the amount of the savings and costs Defendant

25 reasonably and contractually should have expended on data security measures to secure

26 Plaintiff's Personal Information, (ii) time and expenses mitigating harms, (iii)

27 diminished value of Personal Information, (iv) loss of privacy, (v) harms as a result of

28 identity theft; and (vi) an increased risk of future identity theft.

129.    Defendant, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its wrongful conduct.

130.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

## COUNT THREE – BREACH OF IMPLIED CONTRACT

131.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

132.    When Plaintiff and the Class members provided their Personal Information to Defendant when seeking rental and storage services, they entered into implied contracts in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiff's and Class members' Personal Information and to timely notify them in the event of a data breach.

133.    Defendant required Plaintiff and Class members to provide their Personal Information in order for them to use Defendant's rental services.

134.    Based on the implicit understanding, Plaintiff and the Class accepted Defendant's offers and provided Defendant with their Personal Information.

135.    Plaintiff and Class members would not have provided their Personal Information to Defendant had they known that Defendant would not safeguard their Personal Information, as promised, or provide timely notice of a data breach.

136.    Plaintiff and Class members fully performed their obligations under their implied contracts with Defendant.

1    137.    Defendant breached the implied contracts by failing to safeguard Plaintiff's

2    and Class members' Personal Information and by failing to provide them with timely

3    and accurate notice of the Data Breach.

4    138.    The losses and damages Plaintiff and Class members sustained (as

5    described above) were the direct and proximate result of Defendant's breach of its

6    implied contracts with Plaintiff and Class members.

7    **COUNT FOUR – VIOLATIONS OF THE DRIVERS PRIVACY ACT,**
8    **18 U.S.C. § 2721, et. seq.**

9    139.    Plaintiff incorporates by reference all allegations of the preceding

10   paragraphs as though fully set forth herein.

11   140.    Defendant knowingly obtained Plaintiff's and the Class's Personal

12   Information, from a motor vehicle record, including their driver's licenses.

13   141.    Defendant voluntarily decided to populate its customer contracts when

14   accessed via its contract search tool with Plaintiff's and the Class's personal information,

15   including their driver's license numbers.

16   142.    Defendant reasonably should have known that populating its customer

17   contracts when accessed via its contract search tool would disclose Plaintiff's and the

18   Class's driver's license numbers to cybercriminals for impermissible purposes.

19   143.    In failing implement reasonable measures to prevent the Data Breach,

20   Defendant disclosed Plaintiff's and the Class's driver's license numbers for an

21   impermissible purposes.

22   144.    Each of Plaintiff and Class Members demands actual damages, but not less

23   than liquidated damages in the amount of $2,500, punitive damages upon proof of

24   willful or reckless disregard of the law, reasonable attorney's fees and other litigation

25   costs reasonable incurred, and such other preliminary and equitable relief as the court

26   determines to be appropriate.

27

28

1   **VII.   PRAYER FOR RELIEF**

2   WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as

3   follows:

4       a.   An order certifying this action as a class action under Fed. R. Civ.

5           P. 23, defining the Class as requested herein, appointing the

6           undersigned as Class counsel, and finding that Plaintiff is a proper

7           representative of the Class requested herein;

8       b.   A judgment in favor of Plaintiff and the Class awarding them

9           appropriate monetary relief, including actual damages, restitution,

10           attorney fees, expenses, costs, and such other and further relief as is

11           just and proper.

12       c.   An order providing injunctive and other equitable relief as

13           necessary to protect the interests of the Class and the general public

14           as requested herein, including, but not limited to:

15           i.   Ordering that Defendant engage third-party security

16               auditors/penetration testers as well as internal security

17               personnel to conduct testing, including simulated attacks,

18               penetration tests, and audits on Defendant's systems on a

19               periodic basis, and ordering Defendant to promptly correct

20               any problems or issues detected by such third-party security

21               auditors;

22           ii.   Ordering that Defendant engage third-party security auditors

23               and internal personnel to run automated security monitoring;

24           iii.   Ordering that Defendant audit, test, and train its security

25               personnel regarding any new or modified procedures;

26           iv.   Ordering that Defendant segment customer data by, among

27               other things, creating firewalls and access controls so that if

28

1    one area of Defendant's systems is compromised, hackers

2    cannot gain access to other portions of Defendant's systems;

3    v.    Ordering that Defendant cease transmitting Personal

4    Information via unencrypted email;

5    vi.    Ordering that Defendant cease storing Personal Information

6    in email accounts;

7    vii.    Ordering that Defendant purge, delete, and destroy in a

8    reasonably secure manner customer data not necessary for its

9    provisions of services;

10    viii.    Ordering that Defendant conduct regular database scanning

11    and securing checks;

12    ix.    Ordering that Defendant routinely and continually conduct

13    internal training and education to inform internal security

14    personnel how to identify and contain a breach when it

15    occurs and what to do in response to a breach; and

16    x.    Ordering Defendant to meaningfully educate its current,

17    former, and prospective employees and subcontractors about

18    the threats faced as a result of the loss of financial and

19    personal information to third parties, as well as the steps they

20    must take to protect against such occurrences;

21    d.    An order requiring Defendant to pay the costs involved in notifying

22    the Class members about the judgment and administering the claims

23    process;

24    e.    A judgment in favor of Plaintiff and the Class awarding them pre-

25    judgment and post-judgment interest, reasonable attorneys' fees,

26    costs and expenses as allowable by law; and

27    f.    An award of such other and further relief as this Court may deem

28    just and proper.

1  **VIII.  DEMAND FOR JURY TRIAL**

2       Plaintiff demands a trial by jury on all issues so triable.

3

4  DATED:  September 22, 2022          /s/ Rory Brian Riley
                                      Rory Brian Riley (ASB 032933)
5                                     Morgan and Morgan Arizona PLLC
                                      2355 E. Camelback Road Suite 335
6                                     Phoenix, AZ 85016
                                      Phone: 602-735-0250
7                                     Email: briley@forthepeople.com

8
                                      William B. Federman*
9                                     **FEDERMAN & SHERWOOD**
                                      10205 N. Pennsylvania Ave.
10                                    Oklahoma City, OK 73120
                                      Telephone: (405) 235-1560
11                                    Email: wbf@federmanlaw.com

12
                                      *Pro Hac Vice application to be submitted
13

14                                    Counsel for Plaintiff and the Proposed Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28